IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| CLARA MONROE, on behalf of herself) and all others similarly situated, ) <br> ) <br>        Plaintiff, ) <br> ) <br>        vs. ) <br> ) <br> Anderson Brothers Bank, ) <br> ) <br>        Defendant. ) <br> ——————————————————) | Case No.: 4:25-cv-06007-JD <br><br> **MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS** |

This matter arises under the Electronic Fund Transfer Act, 15 U.S.C. § 1693 et seq. ("EFTA"). Defendant Anderson Brothers Bank ("Defendant") moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the Amended Complaint (DE 11) filed by Plaintiff Clara Monroe, on behalf of herself and all others similarly situated ("Plaintiff" or "Monroe"). (DE 12.) Plaintiff filed a response in opposition (DE 15), and Defendant submitted a reply (DE 16). Having considered the parties' submissions and the applicable law, the Court denies Defendant's Motion to Dismiss (DE 12).

## I.    BACKGROUND

The following facts are taken from Plaintiff's Amended Complaint and the exhibit attached to it, and they are accepted as true for this motion.

### A.    Factual Background

Monroe is a South Carolina resident and an account holder of Defendant Anderson Brothers Bank. (DE 11 ¶ 8.) She brings this action under the EFTA and Regulation E, alleging that Defendant charged overdraft fees on one-time debit card

and ATM transactions without first obtaining affirmative, informed consent through a compliant overdraft opt-in disclosure. (DE 11.) Defendant is a South Carolina bank with assets of more than $1.9 billion. (*Id.* ¶ 9.) Defendant maintains its headquarters and principal place of business in South Carolina, is engaged in retail banking, and operates 25 branches throughout South Carolina. (*Id.*)

According to the Amended Complaint, Defendant provides customers with an overdraft opt-in disclosure ("Opt-In Form") that purports to be modeled on Regulation E's Model Form A-9 but does not accurately describe Defendant's overdraft practices. (DE 11 ¶¶ 59–64.) Monroe alleges that the Opt-In Form fails to explain (1) how Defendant determines whether a customer has "enough money" to cover a transaction—specifically, whether Defendant uses the "actual balance" or the lower "available balance"—and (2) when Defendant determines whether a transaction results in an overdraft, whether at authorization or settlement. (*Id.*) She asserts that these omissions prevent a reasonable consumer from understanding the nature of Defendant's overdraft service and thus preclude meaningful consent, as required before fees may lawfully be assessed under Regulation E. (DE 11 ¶ 69.)

Monroe further alleges that Defendant charged overdraft fees on transactions in which her actual balance, as reflected on her monthly statements, never fell below zero. (DE 11.) She identifies September 4, 2024, as one such occasion when she was charged overdraft fees on three one-time debit card transactions. (DE 11 ¶¶ 66–68.) She asserts that the fees were not errors but the product of Defendant's standard practices. (*Id.* ¶¶ 70–72.)

In addition to her EFTA claim, Monroe alleges a common law unjust enrichment claim because she alleges that Defendant knowingly accepted and retained a benefit in the form of improper fees to her detriment. (DE 11 ¶¶ 102−104.)

She seeks damages, restitution, injunctive relief, and class-wide redress on behalf of similarly situated accountholders. (DE 11 at 25−26.)

## B.  Procedural Background

Monroe filed this action in the Marion County Court of Common Pleas on May 20, 2025, asserting claims arising from Defendant's alleged assessment of overdraft fees on one-time debit card and ATM transactions without providing disclosures compliant with the Electronic Fund Transfer Act and Regulation E. (DE 1-1.) She brought the action on behalf of a proposed class of Defendant's checking account holders who, during the applicable limitations period, were opted into overdraft coverage and assessed overdraft fees on such transactions. (DE 1-1.)

Defendant removed the case to this Court on June 20, 2025, pursuant to 28 U.S.C. §§ 1331 and 1441, asserting federal-question jurisdiction based on the EFTA claim and supplemental jurisdiction on the state law claim. (DE 1.) Defendant filed an initial motion to dismiss on June 27, 2025. (DE 5.) On August 8, 2025, Monroe moved for leave to amend her complaint, and the Court granted the motion on August 25, 2025. (DE 9; DE 10.) Monroe filed her Amended Complaint on August 29, 2025, asserting two causes of action: violation of the EFTA and Regulation E and unjust

3

enrichment. (DE 11.) The Amended Complaint also seeks class certification with the class defined as: [1]

> All Defendant consumer checking account holders who, during the applicable statute of limitations, were opted into overdraft protection for one-time debit card transactions and ATM transactions and were assessed overdraft fees on these transactions.

(*Id.* ¶ 74.)

Defendant filed the present Motion to Dismiss the Amended Complaint on September 12, 2025. (DE 12.) Under the parties' stipulation, Monroe's deadline to respond was extended to October 24, 2025, and Defendant's reply deadline to November 14, 2025. (DE 13.) Monroe timely responded in opposition (DE 15), and Defendant filed its reply (DE 16). The motion is now ripe for disposition.

## II.    LEGAL STANDARD

**Fed. R. Civ. P. 12(b)(6)**

A motion to dismiss for failure to state a claim challenges the legal sufficiency of a complaint. *See Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993). To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570

---

[1]    The Court expresses no opinion at this stage on whether class certification is appropriate under Rule 23.

(2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). While a complaint "does not need [to allege] detailed factual allegations," pleadings that contain mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). In other words, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'– 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Rule 8(a)(2), Fed. R. Civ. P.).

### III.    DISCUSSION

**A.    Overview of the Applicable Law**

The Electronic Fund Transfer Act and Regulation E are consumer-protection measures that govern electronic fund transfers and ensure that consumers receive accurate and meaningful disclosures about financial institutions' electronic services. *See* 12 C.F.R. § 1005.1(b). All required disclosures, including disclosures relating to overdraft services, must be provided in a form that is "clear and readily understandable." *Id.* § 1005.4(a)(1).

Regulation E prohibits a financial institution from assessing any fee on an ATM or one-time debit card transaction pursuant to its overdraft service unless the consumer first receives a segregated opt-in notice describing the institution's

overdraft service and affirmatively consents. *Id.* § 1005.17(b)(1). The required notice must be "substantially similar to Model Form A-9," but the safe harbor applies only where the notice accurately reflects the institution's actual overdraft practices. *Id.* § 1005.17(d). Courts have held that even a form patterned on Model Form A-9 may be noncompliant if it obscures or fails to disclose material aspects of the bank's overdraft methodology—such as the balance calculation method or the timing of overdraft determinations—and thereby prevents informed consent.

In *Fludd v. South State Bank*, the court denied a motion to dismiss under circumstances materially similar to those alleged here, holding that the same "not enough money in your account" language was plausibly inconsistent with the institution's use of the available-balance method and, therefore, failed to describe the bank's overdraft service clearly. 566 F. Supp. 3d at 482–83. That decision reinforces that questions about the accuracy and clarity of an opt-in disclosure cannot be resolved at the Rule 12(b)(6) stage unless the complaint conclusively establishes compliance.

Under the Rule 12(b)(6) standard, dismissal based on an affirmative defense— such as the safe harbor—is appropriate only if the defense is conclusively established on the face of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

With these principles in mind, the Court turns to Defendant's arguments.

6

**B.     Plaintiff's EFTA and Regulation E Claim**

Plaintiff alleges that Defendant's Opt-In Form fails to describe its overdraft service in a clear and readily understandable manner, as required by 12 C.F.R. §§ 1005.4(a)(1) and 1005.17(b)(1)(i). Specifically, she alleges that the form omits two material pieces of information: (1) that Defendant assesses overdrafts using the "available" balance rather than the "actual" balance, and (2) that Defendant determines overdraft status at settlement rather than authorization. (DE 11 ¶¶ 29–32, 42–53, 59–64.) Plaintiff contends that without disclosure of these practices, a reasonable consumer cannot understand how or when overdrafts occur, rendering any purported consent ineffective.

Accepting the well-pleaded allegations as true, as required at this stage, the Court finds that Plaintiff plausibly alleges a violation of the EFTA and Regulation E. The Amended Complaint alleges that Plaintiff incurred overdraft fees despite her actual balance never becoming negative and identifies specific one-time debit card transactions on which such fees were assessed. (DE 11 ¶¶ 66–69.) These allegations support a reasonable inference that the Opt-In Form failed to accurately describe Defendant's methods for determining overdrafts. Such factual content is sufficient to allege that Defendant did not obtain the affirmative, informed consent required by § 1005.17(b)(1).

Plaintiff also alleges that Defendant's Opt-In Form violates § 1005.17(b)(1)(i)'s requirement that the overdraft notice be "segregated from all other information." (DE 11 ¶ 63.) According to the Amended Complaint, the form incorporates by reference

7

other account documents and disclosures in a manner that prevents it from functioning as an independent, standalone notice. (DE 11 ¶¶ 23, 25.) Regulation E requires that the opt-in notice appear separately so that consumers can clearly understand the institution's overdraft service before providing affirmative consent. *See* 12 C.F.R. § 1005.17(b)(1)(i). At this stage, the Court must accept Plaintiff's allegations as true, and those allegations plausibly support a claim that Defendant's disclosure was not properly segregated. Whether the Opt-In Form actually includes impermissible additional information or cross-references is a factual question inappropriate for resolution at the Rule 12(b)(6) stage.

Defendant further argues that Plaintiff's claim fails because Regulation E does not expressly require disclosure of the balance calculation method (actual balance versus available balance) or the timing of overdraft determinations (authorization versus settlement). (DE 16 at 3−4, 6−7.) This argument misapprehends the nature of Regulation E's disclosure obligations. Section 1005.17(b)(1)(i) requires a financial institution to describe "the institution's overdraft service" in a notice that is clear and readily understandable, and § 1005.17(d)(1) requires that the description include a "brief description" of the overdraft service. The Official Staff Commentary to Regulation E provides that required disclosures must be clear, readily understandable, and must not mislead consumers by obscuring material aspects of the institution's practices. *See* 12 C.F.R. pt. 1005, Supp. I. Courts interpreting Regulation E have likewise held that an opt-in notice may be unclear or misleading where it does not accurately describe the institution's actual method for assessing

8

overdrafts. *See Fludd*, 566 F. Supp. 3d at 482–83. Whether a disclosure must include balance methodology or timing depends on whether those features are material to understanding the bank's overdraft service. Plaintiff alleges they are, and at this stage, those well-pleaded allegations suffice to state a plausible claim. Defendant's argument, therefore, cannot support dismissal.

The Official Staff Commentary to Regulation E emphasizes that required disclosures must be clear, readily understandable, and sufficiently accurate to allow consumers to make informed decisions about whether to opt into overdraft services. *See* 12 C.F.R. pt. 1005, Supp. I. Consistent with these principles, courts have held that an opt-in notice may violate Regulation E where the description of overdraft services does not align with the institution's actual practices. *See Fludd*, 566 F. Supp. 3d at 482–83. At this stage, Plaintiff's allegations that Defendant's Opt-In Form failed to disclose material aspects of its overdraft methodology are, therefore, sufficient to state a plausible claim.

Defendant argues that its use of language similar to Model Form A-9 entitles it to the safe harbor. That said, the safe harbor applies only when a model clause "accurately reflects" the institution's overdraft practices. Plaintiff expressly alleges that Defendant's form did not do so. At this stage, the Court cannot determine as a matter of law that the disclosure accurately reflected Defendant's actual practices. The safe-harbor defense, therefore, cannot support dismissal under *Presley*, 464 F.3d at 483.

Moreover, the disclosure language Defendant relies upon is materially similar to language that courts, including *Fludd*, have found plausibly ambiguous or misleading where an institution uses an available-balance method. *See Fludd*, 566 F. Supp. 3d at 482–83. The Court agrees that whether Defendant's form accurately and clearly described its overdraft service is a fact-intensive inquiry not appropriately resolved on a motion to dismiss.

For these reasons, the Court concludes that Plaintiff has plausibly stated a claim under the EFTA and Regulation E.[2]

## C.    Unjust Enrichment

Defendant also moves to dismiss Plaintiff's unjust enrichment claim on the ground that its contractual disclosures and practices negate any inference that Defendant inequitably retained funds. Plaintiff alleges that Defendant collected overdraft fees that were unlawful because Defendant failed to obtain a valid opt-in under Regulation E. (DE 11 ¶¶ 102–104.) "Unjust enrichment is an equitable doctrine, which permits recovery of the amount that the defendant has been unjustly enriched at the expense of the plaintiff." *Chase Home Fin., LLC v. Risher*, 405 S.C. 202, 212, 746 S.E.2d 471, 476–77 (Ct. App. 2013). One seeking to recover for unjust

---

[2]    Defendant also suggests that Plaintiff's claim fails because she does not allege reliance on, or even that she read, the Opt-In Form. (DE 16 at 4.) Regulation E contains no reliance requirement. The statute imposes a bright-line rule: a financial institution may not assess an overdraft fee on an ATM or one-time debit card transaction unless it has first provided a compliant disclosure and obtained the consumer's affirmative consent. 12 C.F.R. § 1005.17(b)(1). A violation occurs at the moment the fee is assessed without valid opt-in consent, regardless of whether the consumer relied on the disclosure. Plaintiff's allegations that Defendant assessed overdraft fees without securing informed consent under a compliant disclosure are, therefore, sufficient to state a claim.

enrichment must show: "(1) a benefit conferred by the plaintiff upon the defendant; (2) realization of that benefit by the defendant; and (3) retention of the benefit by the defendant under circumstances that make it inequitable for him to retain it without paying its value." *Myrtle Beach Hosp., Inc. v. City of Myrtle Beach,* 341 S.C. 1, 8–9, 532 S.E.2d 868, 872 (2000).

If Plaintiff ultimately establishes that Defendant lacked authority to assess those fees, then Defendant's retention of the fees could plausibly be inequitable. Whether Defendant had lawful authority to collect overdraft fees depends on whether its Opt-In Form complied with Regulation E—a question the Court has concluded cannot be resolved at the Rule 12(b)(6) stage. Under *Presley*, the Court may not dismiss a claim based on a defense not conclusively established on the face of the complaint. 464 F.3d at 483. Plaintiff's unjust enrichment claim is, therefore, not subject to dismissal at this time.

Courts considering similar unjust enrichment claims in the EFTA overdraft context have routinely allowed them to proceed past the pleadings stage when premised on alleged violations of Regulation E. *See*, e.g., *Fludd*, 566 F. Supp. 3d at 486–87. The same outcome is warranted here.

## IV.    CONCLUSION

For these reasons, the Court concludes that Plaintiff has plausibly alleged that Defendant failed to provide the clear, accurate, and complete opt-in disclosure required by the Electronic Fund Transfer Act and Regulation E, and that Defendant's safe-harbor and contractual defenses are not conclusively established on the face of

the Amended Complaint. Accepting Plaintiff's well-pleaded allegations as true, and applying the governing Rule 12(b)(6) standard, dismissal is not warranted at this stage of the litigation.

Accordingly, Defendant Anderson Brothers Bank's Motion to Dismiss (DE 12) is DENIED.

**IT IS SO ORDERED.**

Joseph Dawson, III
United States District Judge

Florence, South Carolina
December 3, 2025